IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| IN THE MATTER OF THE SEIZURE OF: | ) | Case No.: 1:23-SW-698 |
|---|---|---|
| | ) | |
| **Three Domain Names Registered at Verisign, Inc.** | ) | **Filed Under Seal** |
| | ) | |
| | ) | |

**AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT**

I, Christopher D. Silva, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I am a Special Agent with the Department of Commerce ("DOC"), Bureau of Industry and Security ("BIS"), Office of Export Enforcement ("OEE"), and I have been so employed since October 2021. I am empowered by law to investigate and make arrests for offenses involving the unlawful export of goods, technology, and services to destinations outside the United States. As a special agent for OEE, I am responsible for investigating violations of laws relating to the export of controlled commodities and technology from the United States. As part of my training as a special agent, I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center.

2. During the course of my duties as a special agent, I have conducted and supported numerous investigations involving the illegal export of items from the United States. As part of these investigations, I have participated in interviews of suspects and witnesses, conducted surveillance, and assisted with the execution of court-authorized search warrants. I have also obtained and analyzed data and evidence from a variety of sources, including electronic

communications, and used other investigative techniques to secure relevant information and evidence regarding various criminal activities. As a result of my training and experience, I am familiar with techniques and methods of operation used by individuals and illicit procurement networks that are involved in the illegal export of items, as well as techniques and methods used to evade detection by U.S. law enforcement.

3. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). As such, I am empowered to conduct investigations of and to make arrests for offenses enumerated in 50 U.S.C. § 1705 (Penalties for Violating the International Emergency Economic Powers Act).

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. As set forth below, there is probable cause to believe that the following three domain names – ctexlb.com, imarwaiktissad.com, and russia-now.com (the "**SUBJECT DOMAIN NAMES**") – are being operated in a manner that violates 50 U.S.C. § 1705 (IEEPA) and 31 C.F.R. §§ 594.201 and 594.406 (the "Subject Statutes") and should not be allowed to operate using the infrastructure provided by American companies.

6. As further described in this affidavit, Specially Designated Nationals[1] ("SDNs"), and Specially Designated Global Terrorists[2] ("SDGTs") often utilize the VeriSign, Inc. domain registry for their websites. VeriSign, Inc. ("VeriSign") is an American company headquartered in Reston, Virginia. VeriSign operates the ".com" root name server. A root name server helps direct traffic to a website by sorting a user's search using the highest-level domain, such as ".com," ".edu," or ".io."

7. When an SDGT or SDN uses an American company like VeriSign to register a website's name, regardless of website content, that entity has violated 50 U.S.C. § 1705 and 31 C.F.R. §§ 594.201 and 594.406, which prohibit SDNs and SDGTs from obtaining services, including website and domain services, in the United States without a license from the U.S. Department of the Treasury, Office of Foreign Assets Control ("OFAC").

8. As set forth below, SDNs or SDGTs such as Hassan Ahmed Moukalled, Rani Hassan Moukalled, Rayyan Hassan Moukalled, CTEX Exchange, and Lebanese Company for Information and Studies SARL ("LCIS") do not have a license to utilize the **SUBJECT DOMAIN NAMES**. Nonetheless, I have probable cause to believe that the **SUBJECT DOMAIN NAMES** are assets of an SDN or SDGT engaged in planning or perpetrating a federal crime of terrorism or that afford any person a source of influence over these entities or organizations. They are therefore subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i), and use of the **SUBJECT DOMAIN NAMES** violates the Subject Statutes.

---

[1] Specially Designated Nationals are entities designated pursuant to the programs listed in Chapter V, Title 31 of the Code of Federal Regulations. A complete list of Specially Designated Nationals is available on the Department of the Treasury's website.

[2] Title 31, Code of Federal Regulations, Section 594.310 defines a Specially Designated Global Terrorist as any person whose property and interests are blocked pursuant to 31 C.F.R. § 594.201(a).

9. I make this affidavit for a warrant to seize the property described in Attachment A, incorporated herein by this reference, specifically, the **SUBJECT DOMAIN NAMES**. The procedure by which the United States will seize the **SUBJECT DOMAIN NAMES** is described in Attachment A hereto and below.

## BACKGROUND ON DOMAIN NAMES

10. Based on my training and experience and information learned from others, I am aware of the following:

11. Internet Protocol Address: An Internet Protocol address ("IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g. 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. An IP address acts much like a home or business street address – it enables computers connected to the Internet to properly route traffic to each other. The assignment of IP addresses to computers connected to the Internet is controlled by Internet Service Providers (ISPs).

12. Domain Name: A domain name is a simple, easy-to-remember way for humans to identify computers on the Internet, using a series of characters (e.g. letters, numbers, or other characters) that correspond with a particular IP address. For example, "usdoj.gov" and "cnn.com" are domain names.

13. Domain Name System: The domain name system ("DNS") is, among other things, a hierarchical convention for domain names. Domain names are composed of one or more parts, or "labels," that are delimited by periods, such as "www.example.com." The hierarchy of domains descends from right to left; each label to the left specifies a subdivision, or subdomain, of the

domain on the right. The right-most label conveys the "top-level" domain. For example, the domain name "www.example.com" means that the computer assigned that name is in the ".com" top-level domain, the "example" second-level domain, and "www." is the web server.

14. Domain Name Servers: DNS servers are computers connected to the Internet that convert, or resolve, domain names into IP addresses.

15. Registry: For each top-level domain (such as ".com"), there is a single company, called a "registry," that determines which second-level domain resolves to which IP address. For example, VeriSign is the registry for the ".com" and ".me" top-level domains.

16. Registrar & Registrant: Domain names may be purchased through a registrar, which acts as the intermediary between the registry and the purchasers of the domain name. The individual or business that purchases, or registers, a domain name is called a "registrant." Registrants control the IP address, and thus the computer, to which their domain name resolves. Thus, a registrant may easily move a domain name to another computer anywhere in the world. Registrars typically maintain customer and billing information about the registrants who used their domain name registration services.

17. Whois: A "Whois" search provides publicly available information as to which entity is responsible for a particular IP address or domain name. A Whois record for a particular IP address or domain name will list a range of IP addresses that the IP address falls within and the entity responsible for that IP address range and domain name. For example, a Whois record for the domain name XYZ.COM might list an IP address range of 12.145.67.0 – 12.145.67.99 and list Company ABC as the responsible entity. In this example, Company ABC would be responsible for the domain name XYZ.COM and IP addresses 12.145.67.0 – 12.145.67.99.

**RELEVANT CRIMINAL STATUTES**

18. The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, authorizes the President to impose economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy, or economy of the United States when the President declares a national emergency with respect to that threat.

19. Pursuant to the authority under IEEPA, the President of the United States and the Executive Branch have issued orders and regulations governing and prohibiting certain transactions by U.S. persons or involving U.S. goods. Title 50, United States Code, Section 1705(a), provides that "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter." Section 1705(c) provides that a person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act described in subsection (a) shall, upon conviction, be fined not more than $1,000,000, or if a natural person, may be imprisoned for not more than twenty years, or both.

20. On September 23, 2001, the President of the United States issued Executive Order ("E.O.") 13224 titled "Blocking Property and Prohibiting Transactions with Persons who Commit, Threaten to Commit, or Support Terrorism." The E.O. is a tool the U.S. Government utilizes to combat the threat of terrorism and to impede support to terrorism.

21. E.O. 13224 authorizes the Secretary of State, in consultation with the Secretary of the Treasury and the Attorney General, to designate individuals or entities that he determines have committed, or pose a significant risk of committing, acts of terrorism against U.S. interests. These individuals and entities may also be designated for providing financial, material, or technological support for, or goods or services to or in support of, for example, Hizballah –

which is designated by the Secretary of State as a foreign terrorist organization pursuant to section 219 of the Immigration and Nationality Act (8 U.S.C. § 1189). *See* 31 CFR § 566.311.

22. OFAC publishes the list of designated individuals, groups, and entities, such as terrorist organizations and their members. Collectively, such individuals and companies are called "Specially Designated Nationals," "SDNs," or "Specially Designated Global Terrorists," "SDGTs." Their property and interests are blocked pursuant to 31 C.F.R. § 594.201(a) and the entities are published in the Federal Register and incorporated into OFAC's SDN List.

23. Section 1 of E.O. 13224 states, in relevant part, that all property and interests in property of certain persons that are in, or come within the United States, or that come within the possession or control of United States persons are blocked.

24. Section 2(a) of the Executive Order states: "any transaction or dealing by United States persons or within the United States in property or interests in property blocked pursuant to this order is prohibited, including but not limited to the making or receiving of any contribution of funds, goods, or services to or for the benefit of those persons listed in the Annex to this order or determined to be subject to this order[.]"

25. To implement E.O. 13224, OFAC issued 31 C.F.R. § 594 – Global Terrorism Sanctions Regulations ("GTSR"). Without prior authorization from OFAC, this provision prohibits all tangible and intangible transactions with SDNs and SDGTs.[3] Additionally, 31

[3] Section 594.309 states: "The terms *property* and *property interest* include, but are not limited to, money, checks, drafts, bullion, bank deposits, savings accounts, debts, indebtedness, obligations, notes, guarantees, debentures, stocks, bonds, coupons, any other financial instruments, bankers acceptances, mortgages, pledges, liens or other rights in the nature of security, warehouse receipts, bills of lading, trust receipts, bills of sale, any other evidences of title, ownership or indebtedness, letters of credit and any documents relating to any rights or obligations thereunder, powers of attorney, goods, wares, merchandise, chattels, stocks on hand, ships, goods on ships, real estate mortgages, deeds of trust, vendors' sales agreements, land contracts, leaseholds, ground rents, real estate and any other interest therein, options, negotiable

C.F.R. § 594.406 not only prohibits transactions or dealings involving blocked property with SDNs and SDGTs, but also prohibits services performed in the United States or by U.S. persons, to include technological services provided by U.S. registries such as Verisign.

26. SDNs and SDGTs violate the Subject Statutes by obtaining or utilizing goods or services in the United States without a license from OFAC. Accordingly, the Subject Statutes preclude Hassan Ahmed Moukalled, Rani Hassan Moukalled, Rayyan Hassan Moukalled, CTEX Exchange, LCIS, and their members from utilizing or receiving services for the **SUBJECT DOMAIN NAMES**, which are owned and operated by Verisign, a U.S. company.

**DESIGNATED INDIVIDUALS AND ENTITIES**

27. The individuals and entities below have been designated as a part of E.O. 13224 for having committed acts of terrorism, posing a significant risk for committing acts of terrorism, or for providing financial, material, or technological support to Hizballah.

28. On January 24, 2023, OFAC designated Hassan Ahmed Moukalled, Rani Hassan Moukalled, and Rayyan Hassan Moukalled as Specially Designated Nationals (SDNs). OFAC designated these individuals because they facilitated financial activities for Hizballah. At the center of this network is Hassan Moukalled – a Lebanese money exchanger and so-called financial expert. According to OFAC:

> Hassan Moukalled established CTEX Exchange in mid-2021 on behalf of Hizballah and used CTEX Exchange as a financial front company located in Beirut. Senior Hizballah financial official Muhammad Qasir and his deputy Muhammad Qasim al-Bazzal were reportedly behind the establishment of CTEX. In mid-2021, Hassan Moukalled received a license from Lebanon's central bank for CTEX to transfer money within Lebanon

instruments, trade acceptances, royalties, book accounts, accounts payable, judgments, patents, trademarks or copyrights, insurance policies, safe deposit boxes and their contents, annuities, pooling agreements, *services of any nature whatsoever*, contracts of any nature whatsoever, and *any other property*, real, personal, or mixed, tangible or *intangible*, or interest or interests therein, present, future or contingent." (emphasis added)

> and abroad, and within a year the company had obtained significant market share within Lebanon's currency transfer sector and was reportedly collecting millions of U.S. dollars for the Central Bank of Lebanon. At the same time, CTEX was also providing U.S. dollars to Hizballah institutions and recruiting money changers loyal to Hizballah. Hassan Moukalled advocates for CTEX directly to the central bank governor and receives commissions in the hundreds of thousands of dollars daily. As Lebanon and its economy faced a dire and ongoing financial crisis in mid-2022, Hassan Moukalled was working with Hizballah officials to capitalize on investors' and expatriates' efforts to make money in the Lebanese financial sector and transfer cash out of Lebanon. Hassan Moukalled was also working to expand CTEX outside of Lebanon.

a. According to OFAC, Hassan Moukalled also serves as a financial advisor to Hizballah and carries out business deals on behalf of the group throughout the region.

b. I have also learned from OFAC that Hassan Moukalled's sons, Rayyan Moukalled and Rani Moukalled, use CTEX Exchange and other companies to facilitate the financial activities of Hizballah.

c. On January 24, 2023, OFAC designated CTEX Exchange as an SDN. OFAC concluded that CTEX Exchange utilizes domain www.ctexlb.com and listed that domain in the designation as a blocked entity.

29. On January 24, 2023, OFAC also designated the Lebanese Company for Information and Studies SARL ("LCIS") and the Lebanese Company for Publishing, Media, and Research and Studies ("LCPMR") as SDNs because it found those entities were "owned, controlled, or directed by, directly or indirectly, Hassan Moukalled."

a. The press release from OFAC discussing the designation of LCIS stated: LCIS is "owned or controlled by Hassan Moukalled, who is the editor in chief for LCIS, and also serves as the chief economic editor of several websites associated with LCIS." According to OFAC, these websites include www.greenarea.me, imarwaiktissad.com, and Russia-Now.com.

  b. OFAC has also found that Hassan Moukalled owns and controls the Lebanese Company for Publishing, Media, and Research and Studies ("LCPMR"). The OFAC press release states Hassan Moukalled is listed as the director of LCPMR which is co-located with LCIS.

30. Hassan Ahmed Moukalled, Rani Hassan Moukalled, Rayyan Hassan Moukalled, CTEX Exchange, and LCIS will hereafter be referred to collectively as the Subject Entities.

31. The Subject Statutes prohibit SDNs and SDGTs from obtaining or utilizing goods or services in the United States without a license from OFAC. Accordingly, the Subject Statutes preclude the Subject Entities from owning any domains that use Verisign's services, because Verisign is a United States company.[4] For the reasons discussed below, I have probable cause to believe the **SUBJECT DOMAIN NAMES** are still owned and operated by the Subject Entities and those entities have not obtained a license to use U.S.-based services to support those domains. As a result, the **SUBJECT DOMAIN NAMES** can be seized and forfeited pursuant to 18 U.S.C. § 981(a)(1)(G)(i).

**THE SUBJECT DOMAINS CONTINUE TO BE UTILIZED BY OFAC DESIGNATED ENTITIES**

32. As discussed in the above paragraphs, the Subject Entities were designated as SDNs after OFAC found they were planning to perpetrate terrorism against the United States or providing material support to Hizballah, which likewise has and is planning to perpetrate terrorism against the United States. Companies based in the United States and United States persons are prohibited from providing services to the **SUBJECT DOMAIN NAMES**, without

[4] This prohibition on the utilization of the SUBJECT DOMAIN NAMES is not based on the content posted to the SUBJECT DOMAIN NAMES. Rather, the violation stems from the mere utilization of the United States-based services without a license from the Office of Foreign Asset Control, as explained further below.

prior authorization from OFAC. This is because the **SUBJECT DOMAIN NAMES** are listed by OFAC as owned by the blocked entities and the Subject Entities still control them.

33. On or about October 13, 2023, I conducted an open-source domain search, reviewed IP and Whois record information, and confirmed that "ctexlb.com," "imarwaiktissad.com," and "russia-now.com" are active domains and remain designated by OFAC. A separate Whois search conducted on October 20, 2023, revealed that the IP address 5.189.137.84 was used to host each of the **SUBJECT DOMAIN NAMES**. This means that the same internet infrastructure supports (and has always supported) "ctexlb.com," "imarwaiktissad.com," and "russia-now.com."

34. Further review of Whois's records concerning the **SUBJECT DOMAIN NAMES** revealed the following: (1) Verisign was, and remains, the Registry for each of the **SUBJECT DOMAIN NAMES**; (2) the domain "ctexlb.com" was first created on March 11, 2022, and next expires on March 11, 2024; (3) the domain "imarwaiktissad.com" was first created on June 3, 2008, and next expires on June 3, 2025; and (4) the domain "russia-now.com" was first created on October 6, 2015, and next expires on October 6, 2025. Thus, the publicly available records for the **SUBJECT DOMAIN NAMES** show that the internet infrastructure used to support them has not materially changed since OFAC listed them.

35. On or about October 13, 2023, I used the internet to review each of the **SUBJECT DOMAIN NAMES**. Using the WaybackMachine – a website that captures and stores images of other websites at specific dates and times – I searched the **SUBJECT DOMAIN NAMES** and observed the content displayed by these domains. From this research, I confirmed that ctexlb.com and russia-now.com had not materially changed after OFAC sanctioned them.

36. When I searched for ctexlb.com online, on or about October 13, 2023, I observed the following website:



This site advertises a business called "CTEX: Currency Transfer Exchange" located at the Bay Tower building in Beirut's Downtown District in Lebanon. The webpage also states that CTEX is responsible for "2,600 monthly transactions," "2,800 satisfied customers," and has a professional team of over 89 individuals. The website also provided a "call our experts" option and listed the phone number +961 1360-097. When I searched the WayBackMachine to see what that same domain looked like on July 27, 2022, (the only capture prior to OFAC's designation) I saw the same image, phone number, and statistics.

37. When I searched online for russia-now.com on or about October 13, 2023, I observed the following website:



The website has several articles all in Cyrillic type, which appear to cater to a Russian-speaking audience. When I searched the WayBackMachine to see what that same domain looked like on December 6, 2022, (the most recent capture prior to OFAC's designation) I saw the same images with the same text:



38. Finally, when I searched for imarwaiktissad.com on or about October 13, 2023, I was redirected to "imarwaiktissad.com.ib." That website produced the following image:



This is clearly the same website as ctexlb.com, but it has a different domain name. The imarwaiktissad.com.ib website has the same images, phone number, and statistics as ctexlb.com. When I did a historical search for imarwaiktissad.com using the WayBackMachine I saw a different website – what appeared to be a series of blog posts and news in Arabic. But imarwaiktissad.com still pointed to imarwaiktissad.com.ib. Moreover, not only did imarwaiktissad.com.ib have almost the same name as imarwaiktissad.com, it also promoted CTEX with the same imagery and information as ctexlb.com. This gives me probable cause to believe imarwaiktissad.com remains owned and operated by the Subject Entities.

39. On or about October 2, 2023, a review of OFAC's records revealed that no license applications were issued to Hassan Moukalled, Rayyan Moukalled, Rani Moukalled, or CTEX Exchange for use of "ctexlb.com." On or about October 2, 2023, I also reviewed OFAC's records and found that no license applications were issued to Hassan Moukalled, Rayyan Moukalled, Rani Moukalled, or LCIS for use of "imarwaiktissad.com" or "russia-now.com."

40. Because each of the **SUBJECT DOMAIN NAMES** was registered prior to their being associated with the SDNs, and the **SUBJECT DOMAIN NAMES** do not appear to have changed ownership since their designation, I have probable cause to believe the **SUBJECT DOMAIN NAMES** were used by the Subject Entities to provide a range of services, **including in at least one case, serving as a financial front company for** Hizballah, a Lebanon-based terrorist group as well as a designated SDN and Foreign Terrorist Organization,. This utilization, regardless of content, is a violation of 50 U.S.C. § 1705 and 31 C.F.R. §§ 594.201 and 594.406, which prohibit SDNs such as Hassan Ahmed Moukalled, Rani Hassan Moukalled, Rayyan Hassan Moukalled, CTEX Exchange, and LCIS, and their members from obtaining services, including website and domain services, in the United States without a license from OFAC.

41. The top-level domain for "ctexlb.com," "imarwaiktissad.com," and "russia-now.com" is ".com." As previously discussed, the ".com" domain is owned by Verisign, which currently manages all ".com" domains. Thus, there is probable cause to believe that violations of the Subject Statues have been committed and the **SUBJECT DOMAIN NAMES** are the assets of an individual, entity, or organization engaged in planning or perpetrating a federal crime of terrorism or afford any person a source of influence over such an entity or organization. They are therefore subject to seizure and forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(G)(i).

## STATUTORY BASIS FOR SEIZURE AND FORFEITURE

42. Lebanese Hizballah is a designated SDN and Foreign Terrorist Organization. The **SUBJECT DOMAIN NAMES** are assets of Lebanese Hizballah and its affiliated individuals, entities, organizations, or sources of influence over Lebanese Hizballah and its affiliated entities or organizations within the meaning of 18 U.S.C. § 981(a)(1)(G)(i). As a result, the **SUBJECT DOMAIN NAMES** are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i)

as domestic assets: (i) of Lebanese Hizballah -- and its affiliated individuals, entities, and organizations -- a designated foreign terrorist organization, which has engaged in planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5) against the United States, citizens or residents of the United States, or their property; or (ii) affording a person a source of influence over Lebanese Hizballah and its affiliated entities and organizations. The same **SUBJECT DOMAIN NAMES** are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i) and 28 U.S.C. § 2461(c).

43. Title 18, United States Code, Section 981(b) authorizes seizure of property subject to civil forfeiture based upon a warrant supported by probable cause.

44. Title 21, United States Code, Section 853(f), applicable here through Title 28, United States Code, Section 2461(c), authorizes the issuance of a criminal seizure warrant. Title 21, United States Code, Section 853(f) provides in relevant part that a seizure warrant for property subject to forfeiture may be sought in the same manner in which a search warrant may be issued. A court shall issue a criminal seizure warrant if it determines that the property to be seized would, in the event of a conviction, be subject to forfeiture and that a restraining order would be inadequate to assure the availability of the property for forfeiture.

45. Neither a restraining order nor an injunction is sufficient to guarantee the availability of the **SUBJECT DOMAIN NAMES** for forfeiture. By seizing the **SUBJECT DOMAIN NAMES** and redirecting it to another domain, the Government will prevent third parties from acquiring the name and using it to commit additional crimes. Furthermore, seizure of the **SUBJECT DOMAIN NAMES** will prevent third parties from continuing to access the subject domain websites in their present form.

46. Title 28, United States Code, Section 1395(b) provides that venue for civil forfeiture actions is proper in any district where the subject property is found.

47. Since criminal forfeiture is an aspect of the defendant's sentencing, venue for a criminal forfeiture lies wherever venue for a criminal prosecution is proper.

## SEIZURE PROCEDURE

48. As detailed in Attachment A, upon execution of the seizure warrant, the registry for the **SUBJECT DOMAIN NAMES**, Verisign, Inc., located at 12061 Bluemont Way, Reston, Virginia 20190, shall be directed to restrain and lock the **SUBJECT DOMAIN NAMES** pending transfer of all right, title, and interest in the **SUBJECT DOMAIN NAMES** to the United States upon completion of forfeiture proceedings, to ensure that changes to the **SUBJECT DOMAIN NAMES** cannot be made absent court order or, if forfeited to the United States, without prior consultation with U.S. government law enforcement or the Department of Justice.

49. In addition, upon seizure of the **SUBJECT DOMAIN NAMES** by U.S. government law enforcement or the Department of Justice, VeriSign will be directed to associate the **SUBJECT DOMAIN NAMES** to a new authoritative name server(s) to be designated by a law enforcement agent. The Government will display a notice on the website to which the **SUBJECT DOMAIN NAMES** will resolve indicating that the site has been seized pursuant to a warrant issued by this court.

## CONCLUSION

50. For the foregoing reasons, I submit that there is probable cause to believe that the **SUBJECT DOMAIN NAMES** constitute assets of entities and organizations engaged in planning or perpetrating a federal crime of terrorism against the U.S., its citizens and residents,

and their property. The **SUBJECT DOMAIN NAMES** also afford a source of influence over those entities and organizations. Accordingly, the **SUBJECT DOMAIN NAMES** are subject to civil forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(G)(i), and criminal forfeiture through those same statutes as incorporated by 28 U.S.C. § 2461(c), and I respectfully request that the Court issue a seizure warrant for the **SUBJECT DOMAIN NAMES**.

51. Because the warrant will be served on Verisign, which controls the **SUBJECT DOMAIN NAMES**, and Verisign, thereafter, at a time convenient to it, will transfer control of the **SUBJECT DOMAIN NAMES** to the government, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

CHRISTOPHER SILVA
Digitally signed by CHRISTOPHER SILVA
Date: 2023.11.21 08:57:39 -05'00'

Christopher D. Silva
Special Agent
Bureau of Industry and Security
U.S. Department of Commerce

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on November 22nd 2023:

John F. Anderson
Digitally signed by John F. Anderson
Date: 2023.11.22 11:20:02 -05'00'

Hon. John F. Anderson
United States Magistrate Judge
Alexandria, Virginia